UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANGELA M. LUFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-388 |
| | ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 18]. Plaintiff Angela M. Luffman ("Plaintiff") seeks judicial review of the decision of Administrative Law Judge ("ALJ") George L. Evans, III, denying her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 4, 2004, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging a period of disability which began on January 16, 2003. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. After a hearing, ALJ George L. Evans, III, issued a decision on September 15, 2006, that Plaintiff was not under a disability. Plaintiff filed a request for review with the Appeals Council.

While her request for review was pending, Plaintiff filed a second application for DIB on

January 29, 2007. This second application was denied at the initial level on May 31, 2007, but was accepted at the reconsideration level on August 1, 2007, with an established disability onset date of January 16, 2007.

On November 15, 2007, the Appeals Council vacated the unfavorable ALJ decision regarding Plaintiff's first DIB application, and remanded the claim for further consideration. However, the Council also specifically reopened Plaintiff's second DIB claim, noting inconsistencies between the record and the psychological consultative exam that was the basis for the favorable August 1, 2007, decision. The Council specifically directed ALJ Evans to evaluate the entire period of time at issue in both of Plaintiff's DIB applications.

On July 1, 2008, a hearing was held before ALJ Evans to review the determination of Plaintiff's claim. [Tr. 480-511]. On January 21, 2009, the ALJ found that Plaintiff was not under a disability from January 16, 2003, through December 31, 2007. [Tr. 19-30]. On July 6, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 6-9]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 16, 2003 through her date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant has the following severe impairments:

mild disc degeneration from the L3 through L5 levels of the spine, history of L4-5 disc herniation, depression, anxiety, and a history of polysubstance dependence (20 CFR 404.1521 *et seq.*).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual capacity to lift and carry up to 20 pounds occasionally, sit for up to 6 hours out of an 8 hour day, stand for up to 2 hours out of an 8 hour day, and walk for up to 1 hour out of an 8 hour day. She cannot perform any crouching, crawling, or climbing of ladders, ropes, or scaffolds. The claimant cannot perform more than occasional climbing of ramps and stairs, balancing, stooping, or kneeling. She cannot be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle. The claimant has no (absent or minimal) limitations in her ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions. The claimant has mild (slight limitation, but can generally function well) limitations in her ability to understand, remember, and carry out complex instructions; make judgments on complex, work-related decisions; and interact appropriately with the public, supervisors, and co-workers. The claimant has moderate (more than a slight limitation, but the individual is still able to function satisfactorily) limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting.

6. Through the date last insured, the claimant was capable of performing past relevant work as a telesales worker and collections clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 16, 2003, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(f)).

[Tr. 19-30].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if she is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if her physical and/or mental impairments are of such severity that she is not only unable to do her previous work, but also cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 423(d)(2)(A).

Whether a DIB claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, she is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent her from doing his past relevant work, she is not disabled.
>
> 5. Even if claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that

> accommodates her residual functional capacity and vocational factors
> (age, education, skills, etc.), she is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard

is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

Plaintiff contends that the ALJ made three specific errors when deciding her claim:

(A) failing to consider the opinion of her treating physician, Dr. G.M. Pritcher, when determining her mental residual functional capacity ("RFC"), [Doc. 12 at 10-12];

(B) improperly rejecting the opinions of consultative psychological examiners Dr. Candice Blake and Dr. Abraham Breitstein when determining her mental RFC, [Doc. 12 at 12-13]; and

(C) improperly determining her credibility by ignoring the fact that her prescribed medications caused forgetfulness, [Doc. 12 at 8-10, 13-14].

Plaintiff argues that these three errors caused the ALJ to make a determination of her mental RFC that was incorrect and unsupported by the record. Plaintiff further argues that the improper determination of her RFC led to an incorrect finding that she was capable of performing her past relevant work as a tele-sales worker and collections clerk. Plaintiff maintains that she has a significantly impaired ability to concentrate that renders her completely unable to work. See [Doc. 12 at 14]. Accordingly, Plaintiff concludes that she is under a disability and entitled to DIB. [Doc. 12 at 14].

In response, the Commissioner contends that "[t]he ALJ's credibility and RFC findings were supported by the record as a whole, including the objective medical findings, medical opinions, and Plaintiff's activities." [Doc. 19 at 17]. The Court addresses Plaintiff's three allegations of error, and the Commisssioner's specific response to each, in turn.

### A. The ALJ's consideration of Dr. Pritcher's opinion was inadequate.

On April 6, 2007, Plaintiff's primary care physician, Dr. G.M. Pritcher, M.D. provided a Medical Opinion Form (physical). [Tr. 391-93]. On the form, Dr. Pritcher opined that it was reasonable to expect that Plaintiff's "pain, medical condition, or medication would cause lapses in concentration or memory" on a daily basis for several hours each day. [Tr. 392]. Plaintiff asserts

that the ALJ did not discuss Dr. Pritcher's opinion regarding her concentration and memory, and she argues that this omission resulted in there being no indication that the ALJ considered the opinion at all. [Doc. 12 at 12]. Plaintiff argues that the ALJ was required to expressly state and explain the weight given to Dr. Pritcher's opinion regarding her ability to concentrate and remember. See [Doc. 12 at 12] ("the analysis includes no statements acknowledging or describing the weight afforded to Dr. Pritcher's 'nonexertional' opinions regarding severity of pain and side effects from medication and their effects on Plaintiff's ability to concentrate").

In response, the Commissioner asserts that the ALJ did in fact state that he gave no weight to Dr. Pritcher's opinion. See [Doc. 19 at 18] (citing [Tr. 23, 27]). The Commissioner also asserts that the ALJ adequately explained why he gave Dr. Pritcher's opinion no weight. The Commissioner argues that it was reasonable for the ALJ to "give [no] weight to the opinion of Dr. Pritcher . . . because it was inconsistent with the objective medical evidence, including benign clinical findings, and Plaintiff's daily activities." [Doc. 19 at 18]. The Commissioner also argues that Dr. Pritcher's opinion was inconsistent with Dr. Tracy Allred's psychological consultative examination during which Dr. Allred noted that "Plaintiff had no limitation in carrying out simple instructions and making judgments on simple work-related decisions and only mild limitation in carrying out complex instructions and making judgments on complex work-related decisions." [Doc. 19 at 19-20] (citing [Tr. 409]).

When determining a claimant's mental RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided

9

medical treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions); see Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 994 (6th Cir. 2007) (an ALJ may properly accord limited weight to the opinion of a treating physician "where such opinion [is] not supported by sufficient clinical findings and [is] contradicted by substantial objective medical evidence").

The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to the treating source's opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians."). In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of

the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, the ALJ expressly acknowledged that Dr. Pritcher was Plaintiff's treating physician, [Tr. 22], and he addressed Dr. Pritcher's Medical Opinion Form as follows:

> In April 2007, Dr. Pritcher completed a functional capacity assessment form in which he opined that the claimant could not lift or carry more than 10 pounds occasionally or sit, stand, or walk more than one hour each out of an eight hour day. He also assigned various postural and environmental limitations. As explained further below, the undersigned again is [sic] no weight to this functional assessment because it is inconsistent with the claimant's benign clinical exams, conservative treatment, and reported daily activities.

[Tr. 23].

It is clear from the paragraph above that the ALJ did not discuss Dr. Pritcher's specific opinion regarding Plaintiff's lapses in memory and concentration. The ALJ did state that he gave Dr. Pritcher's Medical Opinion Form as a whole "no weight." [Tr. 23]. But he did not explain why Dr. Pritcher's specific opinion that Plaintiff's "pain, medical condition, or medication would cause lapses in concentration or memory" on a daily basis for several hours each day, [Tr. 392], deserved no weight. It was not enough for the ALJ to simply state that the Opinion Form as a whole was "inconsistent with the claimant's benign clinical exams, conservative treatment, and reported daily activities." [Tr. 23]. The Court agrees with Plaintiff that it is not clear from the ALJ's summary of Dr. Pritcher's Opinion Form that any consideration was given to Dr. Pritcher's statement regarding Plaintiff's memory and concentration. See [Doc. 12 at 12].

Further, the ALJ failed to explain how Dr. Pritcher's specific opinion concerning Plaintiff's memory and concentration was inconsistent with anything in the record. The Commissioner correctly points out that Dr. Pritcher's specific opinion was inconsistent with the Medical Source

11

Statement of Ability to do Work-Related Activities (Mental) [Tr. 409-411] completed by consultative psychologist Tracy Allred, Ed.D.[2] [Doc. 19 at 19-20]. However, Dr. Pritcher's specific opinion was consistent with the opinions provided by two other consultative psychologists, Dr. Abraham Breitstein and Dr. Candice Blake. The ALJ stated that "Dr. Breitstein opined that the claimant was severely limited in her ability to maintain concentration and that she had moderate to severe limitations in her ability to understand and remember, interact socially, and adapt to stress." [Tr. 24]. The ALJ also stated that Dr. Blake "opined that the claimant was significantly limited in her ability to maintain concentration." [Tr. 24]. Since the ALJ accurately summarized the opinions of Dr. Blake and Dr. Breitstein, he should have recognized those opinions as being consistent with Dr. Pritcher's opinion. Thus, even if the ALJ's blanket statement that Dr. Pritcher's Opinion Form as a whole was inconsistent with the record was meant to include a specific finding that Dr. Pritcher's opinion regarding Plaintiff's memory and concentration was inconsistent with the record, such a finding was not supported by substantial evidence. The record does not appear to be inconsistent with Dr. Pritcher's opinion regarding Plaintiff's memory and concentration. Instead, Dr. Pritcher's opinion appears to be inconsistent with only one opinion from a consultative psychologist. Accordingly, the Court finds that the ALJ did not adequately explain why he gave no weight to Dr. Pritcher's opinion regarding Plaintiff's memory and concentration.

Moreover, Dr. Pritcher was a treating source, and his opinion was therefore entitled to

---

[2] The Commissioner also argues that Plaintiff's life activities "suggest[] that [her] concentration was not as limited as indicated by Dr. Pritcher." [Doc. 19 at 19]. The Commissioner points out that Plaintiff was able to attend surgery technical school and watch television without difficulty following programs. [Doc. 19 at 19]. The Court notes that the Commissioner's argument is an *ex post* justification for the ALJ's decision to reject Dr. Pritcher's opinion. The ALJ did not explain why he rejected Dr. Pritcher's opinion regarding Plaintiff's memory and concentration. The ALJ also did not state that he relied on the facts that Plaintiff attended school and watched television when deciding to reject Dr. Pritcher's opinion.

12

controlling weight unless the ALJ set forth some basis for rejecting it. See 20 C.F.R. § 404.1527(d)(2); Shelman, 821 F.2d at 321. The Court concludes that the ALJ simply did not provide "good reasons" for rejecting Dr. Pritcher's opinion. See 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401. Accordingly, this case should be remanded so that the Commissioner can properly weigh the opinions regarding Plaintiff's memory and concentration when determining her mental RFC.

> B. **On remand, the ALJ should re-weigh the medical opinions of record when determining Plaintiff's mental RFC.**

Because the Court has already recommended, *supra* in part A, that this case be remanded for a re-determination of Plaintiff's mental RFC that properly accounts for the opinion of Dr. Pritcher regarding Plaintiff's memory and concentration limitations, there is no need for the Court to reach the question of whether the ALJ properly weighed the opinions of Dr. Blake, Dr. Breitstein, and Dr. Allred. On remand, the Commissioner should re-weigh all of the opinions regarding Plaintiff's mental limitations when determining Plaintiff's mental RFC. The Commissioner should also expressly explain the weight given to each opinion, and the reasons for crediting one opinion over another.

> C. **On remand, the Commissioner should consider Plaintiff's memory limitations when determining her credibility.**

Because the degree to which Plaintiff's memory is limited is an issue that should be addressed on remand, there is no need for the Court to reach the question of whether the ALJ appropriately determined Plaintiff's credibility. The Commissioner should make a new determination of Plaintiff's credibility after deciding the severity of her memory limitations. If the Commissioner determines on remand that Plaintiff in fact has a limited ability to remember facts, then he should not rely on Plaintiff's errors in factual recall to justify a finding that she is not

credible.

**V.      CONCLUSION**

For the foregoing reasons, it is hereby **RECOMMENDED**[3] that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **DENIED**, and that Plaintiff's Motion For Judgment on the Pleadings **[Doc. 11]** be **GRANTED** to the extent that it requests that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this report.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).